**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., <br><br> Plaintiff, <br><br> v. <br><br> G4S SECURE SOLUTIONS (USA) INC., <br><br> Defendant. | Case No.  4:21-cv-294 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Love's Travel Stops & Country Stores, Inc., by and through undersigned counsel, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201, files this Complaint, stating as follows:

**PARTIES & JURISDICTIONAL FACTS**

1. Plaintiff Love's Travel Stops & Country Stores, Inc. ("Love's") is a corporation organized under the laws of the State of Oklahoma and maintains its principal place of business in Oklahoma City, Oklahoma.

2. G4S Secure Solutions (USA) Inc. ("G4S") is a corporation organized under the laws of Florida and maintains its principal place of business in Jupiter, Florida. Its registered agent for the State of Missouri is CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri, 65101.

3. G4S is subject to personal jurisdiction in this Court, as it entered into a contract with Love's to provide security services at 6124 North Broadway in St. Louis, Missouri, and Love's allegations, and the allegations of the underlying lawsuit described below, arise out of G4S's failure to perform its contractual obligations pursuant to such store.

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the Plaintiff and the Defendant, as Love's is a citizen of Oklahoma and Defendant is a citizen of Florida. Further, the amount in controversy exceeds $75,000, as Love's seeks a defense and indemnity for claims alleged against it in the matter of *Stewart v. Love's Travel Stops, & Country Stores, Inc., et al.,* Cause No. 2022-CC00888 ("Underlying Action"). In the Underlying Action, the plaintiff seeks to recover for (a) physical and psychological injuries he sustained from a gunshot wound, including for past and future medical treatment and past and future lost earnings, and (b) the wrongful death of his adult son arising from the same incident.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) and E.D.Mo. L.R. 2.07. G4S resides in St. Louis City, Missouri, according to 28 U.S.C. § 1391(c)(2). A substantial part of the events or omissions giving rise to Love's claim occurred in St. Louis City, Missouri, as G4S failed to perform contractual obligations with respect to Love's store in St. Louis City, Missouri.

## FACTUAL BACKGROUND

6. On December 11, 2018, Love's and G4S entered into a Master Security Services Agreement ("Agreement"). A true and accurate copy of the Agreement is attached as **Exhibit 1**.

7. Paragraph 2 of the Agreement provides, in part, that:

2. **G4S DUTIES AND RESPONSIBILITIES:** The duties and responsibilities of G4S shall be set forth herein, including:

    a. Provision of Services:  G4S shall be responsible for the provision of timely and professional security services as set forth in the Schedule of Security Services attached hereto and incorporated by reference (collectively "Security Services") to be performed by G4S.

      b.    Performance and Availability. G4S shall perform the Security Services with the degree of skill and care required by customarily accepted good professional practices and procedures. G4S will perform the Security Services in accordance with the attached Schedule of Security Services. . . .

* * *

      d.    Conformity with the Law. G4S shall maintain and cooperate in the provision of Security Services in full compliance with the requirements of all applicable laws, rules, and regulations.

8.    Paragraph 4 of the Agreement provides in part:

### 4. **SECURITY GUARD SERVICES:**

The Security Services shall include general premises security, including but not limited to the following:

      a.    G4S will provide . . . Security Services. More specifically, G4S (or its agents or independent contractors) shall act as security guards ("Security Guards") as needed as the Store. G4S shall provide Security Guards to Customer upon request by an authorized representative of Customer and in accordance with the Schedule of Security Services.

      b.    . . . G4S shall continually monitor and screen the Security Guards (whether its employees or contractors) to ensure that only properly licensed, screened and trained Security Guards are sent to the Store. . . . All Security Guards will be able . . . to effectively respond to emergencies.

9.    The Schedule of Security Services addendum to the Agreement provides, in part:

### Scope of Work

1. Security Guards shall attempt to deter: shoplifting (by patrolling all merchandise areas, including all parking lots and fuel pumping areas) and other criminal activity such as fighting and other disruptive behavior.

* * *

3. Security Guards shall check the perimeter of the parking lot every ½ hour, as well as the fuel pumps and tire shops, if applicable, documenting any suspicious activity. Security Guards shall be aware of

    any suspicious customer activity, such as loitering, theft, sweet-hearting, grazing, etc. (documenting any and all findings).

* * *

5. Security Guards shall patrol the Store to seek to detect any theft activity, with a heavier concentration on "controllable merchandise" or high theft items.

**ARMED CUSTOM PROTECTION OFFICER® (CPO) PROGRAM**

|  | State |
|---|---|
| * * * |  |
| 461 1-70 [sic], Exit 246A 6124 North Broadway St. Louis, MO 63147 | MO |

G4S will provide armed Security Guards to perform the Security Services at the Customer locations listed, and the hours detailed below ("Core Hours"):

* * *

2. **Love's 0461, St. Louis, MO**. This location has coverage 7 days per week. On Monday through Thursday, coverage shall be 12 hours per day from 6:00 p.m. to 6:00 a.m. On Friday night, the Security Guard shall begin a weekend shift at 10:00 p.m. that runs continuously through Monday morning at 6:00 a.m.

* * *

**Additional Hours**

If Customer requests additional hours outside the Core Hours above, Customer agrees to be billed at 140% of the straight-time billing rate for the additional hours.

10.    Love's requested that G4S provide additional hours of Security Services on November 28, 2019, including from 12:00 p.m. to 2:00 p.m., at Love's Store 461 located at 6124 North Broadway in St. Louis City, Missouri ("Store").

11.     On or about November 28, 2019, at approximately 1:17 p.m., Marvin Humphrey shot Michael Stewart ("Father") and Shawn Stewart ("Decedent") in the parking lot of the Store ("Shooting"). Decedent ultimately died from injuries sustained in the Shooting.

12.     Father filed suit in the Circuit Court of St. Louis City, Missouri, in the Underlying Action, seeking to recover for injuries he sustained in the Shooting, as well as for the alleged wrongful death of Decedent. *See* **State Court Petition, attached as Exhibit 2**.

13.     In the Underlying Action, Father alleges that Love's was negligent in causing his injuries and the Decedent's death by failing to maintain safe premises, failing to act reasonably to protect invitees from reasonably foreseeable dangers, failing to provide adequately trained and competent security guards to patrol the Store, and failing to ensure that security guards were reasonably located to observe danger on the Premises. *See* Exhibit 2 at ¶¶ 14 and 21.

14.     In the Underlying Action, Father alleges that G4S and its security guards were negligent in causing his injuries and the Decedent's death by failing to maintain a safe premises, failing to take reasonable steps to protect invitees from reasonably foreseeable dangers, failing to staff the premises with adequately trained and competent security guards to patrol the premises, failing to adequately manage and supervise the security guards and reasonably locate them to observe dangers on the premises, and failing to reasonably monitor and observe dangerous situations on the premises. *See* Exhibit 2 at ¶¶ 28 and 35.

15.     Paragraph 12 of the Agreement also provides, in part:

> **12.     LIMITS OF LIABILITY AND INDEMNITY:** G4S shall indemnify, defend, and hold harmless Customer, its affiliates, officers, directors, employees and representatives of any of the foregoing from and against any and all liabilities, losses, damages, injuries, causes of action, claims, judgments, penalties, fines, demands and expenses, including reasonable attorneys' fees and expenses, of whatever kind and nature, arising out of, on account of, or resulting from (i) any breach of this Agreement by G4S (or

anyone acting on its behalf or at its direction) or G4S' (or anyone acting on its behalf or at its directions) failure to performed its obligations under this Agreement, or (ii) the negligence (whether active or passive) or willful misconduct of G4S (or anyone acting on its behalf or at its direction). . . .

## COUNT I
### *Declaratory Judgment*

16. Love's incorporates the allegations in paragraphs 1-15, as if fully stated herein.

17. Prior to December 21, 2019, Love's placed G4S on notice of the Shooting by sending a letter tendering its defense against any claims arising out of the Shooting to G4S. The letter was sent to "G4S Secure Solutions (USA) Inc. Attn: Legal Department, Contracts, 1395 University Boulevard, Jupiter, FL 33458."

18. After placing G4S on notice of the Shooting, Love's was contacted by Bruce Johnkoski of Gallagher Bassett, advising that Gallagher Bassett was the third-party administrator reviewing Love's tender.

19. Gallagher Bassett, as third-party administrator for GS4, advised Love's on February 3, 2020, acknowledged it had received Love's tender but would need to complete its investigation before responding to the tender.

20. On or about May 12, 2020, Love's received notice that the Underlying Action had been filed.

21. That same day, Love's requested an update from Gallagher Basset as to the status of G4S providing a defense with respect to the Shooting and advised Gallagher Bassett that the Underlying Action had been filed.

22. Between May 20, 2020, and June 5, 2020, Love's sent four separate emails to Gallagher Bassett requesting a response on its tender of defense.

23. On or about July 6, 2020, counsel for Love's sent a letter to counsel for G4S, demanding a response to Love's tender within seven days and that G4S provide a defense in the Underlying Action.

24. Neither G4S nor Gallagher Bassett accepted the tender by July 14, 2020.

25. On November 12, 2020, counsel for Love's sent another letter demanding defense and indemnity from G4S and from its insurance carrier, for the Shooting and Underlying Action.

26. To date, neither G4S nor its insurance carrier has assumed the defense of Love's in the Underlying Action.

27. To date, neither G4S nor its insurance carrier has accepted Love's demand for indemnity with respect to the Shooting or Underlying Action.

28. In the Underlying Action, Father alleges that the Shooting occurred because the security guards provided by G4S were not adequately trained and that the guards acted negligently in failing to maintain safe premises, to take reasonable steps to protect invitees from reasonably foreseeable dangers, and to reasonably monitor and observe dangerous situations at the Store.

29. The Agreement requires that G4S provide properly trained security guards to attempt to provide general premises security, attempt to deter criminal activity, check the perimeter of the parking lot, and patrol the Store.

30. The Agreement further provides that the Security Guards perform these duties with the "degree of skill and care required by customarily accepted good professional practices and procedures."

31. The Underlying Action alleges that the Shooting arose out of, was on account of, or resulted from either G4S's or its agents' breach of their duties under paragraphs 2 and 4 of the

Agreement, as well as the Schedule of Security Services addendum, or the negligent performance of those duties.

32. Upon information and belief, G4S does not believe that it owes a defense or indemnity to Love's pursuant to Paragraph 12 of the Agreement with respect to the Underlying Action.

33. As G4S has failed to provide a defense to Love's with respect to the Underlying Agreement, an actual controversy exists between the parties as to whether Love's is entitled to such a defense and indemnity.

34. Love's therefore seeks a declaratory judgment that G4S owes Love's a defense with respect to the Underlying Action and indemnity for any settlement reached or judgment awarded in the Underlying Action.

WHEREFORE, Love's respectfully prays for entry of:

(a) A declaratory judgment that G4S owes Love's a defense and indemnity with respect to the Shooting and/or Underlying Action;

(b) An order or injunction requiring G4S to assume the defense of Love's in the Underlying Action;

(c) An order or injunction requiring G4S to reimburse Love's for the costs and reasonable attorneys' fees incurred in the defense of the Underlying Action; and

(d) An order providing such other relief as this Court deems appropriate and just.

## COUNT II
*Breach of Contract - Indemnity*

35. Love's incorporates the allegations in paragraphs 1-34, as if fully stated herein.

36. By failing to provide a defense to Love's with respect to the Underlying Action, G4S has breached its contractual obligation pursuant to paragraph 12 of the Agreement.

37. As a result of G4S's breach, Love's has incurred defense costs and reasonable attorneys' fees in the aggregate amount of $11,501.00 to defend itself in the Underlying Action. Love's will continue to incur these defense costs and reasonable attorneys' fees as long as G4S fails to provide a defense to it in the Underlying Action.

38. Also, as a result of G4S's breach, Love's has incurred additional reasonable attorneys' fees in the amount of $4,617.50 to secure a defense under the Agreement.

WHEREFORE, Love's prays for judgment in its favor as to Count II of its Complaint, for the Court to award it damages in the amount of the defense costs and reasonable attorneys' fees incurred in defense of the Underlying Action, as well as this action, and for such further relief as this Court deems appropriate and just.

## COUNT III
*Breach of Contract -Insurance*

39. Love's incorporates the allegations in paragraphs 1-38, as if fully stated herein.

40. Paragraph 14 of the Agreement also provides, in relevant part:

14. **INSURANCE**: At all times during the Term of the Agreement, G4S, its agents, and/or its independent contractors performing Services under this Agreement shall maintain (and G4S shall certify such coverage) the following minimum insurance coverages with an insurance company or companies licensed to do business in the state where the Store is located, and which is satisfactory to Customer:

> i. General Liability Insurance with policy limits of not less than $5,000,000 per occurrence arid $5,000,000 aggregate. Said insurance shall provide coverage for, but not be limited to, coverage for bodily injury, personal injury, products liability and contractual liability. Said policy shall name Customer as an additional insured to the extent of G4S' liability obligations under this Agreement. G4S shall require all of its agents and contractors

> performing services under the Agreement to name Customer as the certificate holder and additional insured.

41. Upon information and belief, G4S failed to maintain general liability insurance coverage in the amount of $5,000,000/per occurrence that named Love's as an additional insured and provided coverage for the claims against it in the Underlying Action.

42. Upon information and belief, G4S therefore breached its obligation under Paragraph 14 of the Agreement.

43. As a result of G4S's breach and failure to maintain such coverage, Love's has been deprived of a defense in the Underlying Action and has currently incurred defense fees and costs in the amount of $11,501.00 in providing its own defense regarding such claims. Love's will continue to incur these defense costs until its demand for a defense has been accepted.

44. The failure to maintain such coverage may also deprive Love's of indemnity with respect to any judgment entered or settlement reached in the Underlying Action.

WHEREFORE, Love's prays for judgment in its favor as to Count III of its Complaint, for the Court to award it damages in the amount of the defense costs and reasonable attorneys' fees incurred in defense of the Underlying Action, and for such further relief as this Court deems appropriate and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

/s/ William A. Brasher

William A. Brasher, #30155MO
Allison E. Lee, #61626MO
**BOYLE BRASHER LLC**
1010 Market Street, Suite 950
St. Louis, Missouri 63101
P:  (314) 621-7700
F:  (314) 621-1088
wbrasher@boylebrasher.com
alee@boylebrasher.com

*Attorneys for Defendant*